STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. VORNADO, INC., T/A TWO GUYS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 6, 1977—Decided January 13, 1978.

Before Judges HALPERN, LARNER and KING.

*Mr. Henry J. Daaleman,* attorney for appellant.

*Mr. Edward J. Turnbach,* Ocean County Prosecutor, attorney for respondent (*Mr. Ellery Fox,* of counsel).

PER CURIAM. Defendant Vornado, Inc. (Vornado), a New Jersey corporation, was convicted in the Brick Township Municipal Court and in a subsequent trial *de novo* in the Ocean County Court, of violating *N. J. S. A.* 2A:170–90.1, which provides:

> *Employer requiring lie detector test as a condition of employment.*
>
> Any person who as an employer shall *influence,* request or require an employee to take or submit to a lie detector test as a condition of employment or continued employment, is a disorderly person. [Emphasis supplied]

Specifically, the judge at the trial *de novo* found that defendant's supervisory employees had exerted "psychological influence" upon employee Doreen Layton to take a polygraph

(lie detector) test, and that, as a result of Ms. Layton's refusal to take the test, defendant terminated her employment. Vornado was fined $250 for the violation, plus court costs.

In November 1974 security employees at the Brick Township Two Guys store discovered a large number of price tags, which had been removed from various articles of merchandise, hidden in the security personnel locker area of the store. Later the same day two employees approached the assistant store security manager, Tom Conklin, and offered to take polygraph tests. At a party given by the store security manager the following evening the theft was discussed.

Thereafter John Fontana, the Brick Township store supervisor, contacted James Smith, Vornado security supervisor, and explained to him that certain employees had requested that they be given polygraph tests. On November 26, 1974 Smith arrived at the store with a polygraph machine.

On that date Smith individually questioned various security employees, including employee Layton, about the theft. Shortly after leaving the security office Layton was confronted by her supervisor, Ms. Dosois, who asked her why she had balked at the request to take the test. Dosois told Layton she "wished" all security personnel would take the test because the incident was causing unrest in the department.

A few days later supervisors, Fontana, Conklin and Dosois summoned Layton to the security office. Store supervisor Fontana told Layton she was being transferred to a different store to remove the "cloud" from the department. Layton did not report to her new assignment and as a result was terminated.

Defendant Vornado challenges this conviction on two similar grounds.

I. There can be no conviction under *N. J. S. A.* 2A :170–90.1 if no lie detector test is taken.

II. The essential element of "influence" under the statute requires a finding that the employer's action affect the employee in such a manner that he submits to the test under such "influence."

The statute on its face resists the construction argued by defendant. The essence of the offense is the influence, request or requirement flowing from the employer or its agents. There is no statutory requirement that a polygraph test actually be administered before a violation occurs. Clearly, the Legislature meant to prevent direct or indirect psychological pressures to submit to testing, not simply to punish administration of polygraph tests actually conducted. The employee does not have to succumb before the statute is violated.

Defendant Vornado's contention that the word "influence" requires an employee's submission to a polygraph is untenable. In *State v. Community Distributors,* 123 *N. J. Super.* 589 (Cty. Ct. 1973), aff'd 64 *N. J.* 479 (1974), Judge Aikins correctly described the term "influence" as the "broadest" of the three terms and defined it by the generally accepted meaning. 123 *N. J. Super.* at 595–597.

INFLUENCE refers to power exerted over others, often through high position, strength of intellect, force of character, or degree of accomplishment, sometimes exercised unconsciously and felt insensibly, sometimes consciously or calculated brought to bear. . . . *Webster's Third New International Dictionary* (1971).

Also, it should be noted that the Supreme Court specifically distinguished New Jersey's statute from similar laws of other states because of its inclusiveness. *State v. Community Distributors, supra,* 64 *N. J.* at 485. See also, *State v. Berkey Photograph Inc.,* 150 *N. J. Super.* 56 (App. Div. 1977). In fact, New Jersey's statute is the most comprehensive ban of such activity in the nation. Note, "The Polygraph and Pre-Employment Screening," 13 *Houston L. Rev.* 551, 557–558, 563–566 (1976); Note, "Lie Detectors in the Employment Context," 35 *La. L. Rev.* 694, 701 (1975); Note, "The Working Man's Nemesis — The Polygraph," 6 *N. C. Central* 94, 105 (1974). At least 17 jurisdictions now ban employment related polygraph examinations.

The trial judge's finding that Vornado influenced employee Layton to take a polygraph test as a condition of continued

employment is fully supported by the evidence. We conclude that defendant's conduct falls squarely within the statutory prohibition.

Affirmed.